IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CASSIE GREEN a.k.a<br>CASSIE HAYES-MCDONALD,<br><br>**Plaintiff,**<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES,<br>LLC; AMERICOLLECT, INC.;<br>PENNSYLVANIA HIGHER EDUCATION<br>ASSISTANCE AGENCY PARENTS'<br>ASSOCIATION, INC.; FIRST PREMIER<br>BANK; BARCLAYS BANK DELAWARE;<br>ALLY FINANCIAL, INC.; AND COMENITY,<br>LLC,<br><br>**Defendants.** | CIVIL ACTION NO.<br>4:20-CV-01096 |

**DEFENDANT COMENITY, LLC'S SUGGESTIONS IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Defendant Comenity, LLC ("Comenity") hereby submits its Suggestions in Support of its Motion to Compel Arbitration and to Dismiss, stating as follows:

**I. INTRODUCTION**

The United States Supreme Court has repeatedly emphasized that "[c]ourts must 'rigorously enforce' arbitration agreements . . . ." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Despite this, all too many parties to contracts with arbitration clauses continue to take their disputes to court.

This motion to compel arbitration is yet another that should not be necessary. In 2017, plaintiff Cassie Green a/k/a Cassie Hayes-McDonald ("Plaintiff") contracted with Comenity to open a Torrid credit card account. Before opening this account, Plaintiff was shown a copy of an

account agreement and was required to consent to its terms.  Once her application was approved, Plaintiff began making purchases with the card—and did so through August 2020.  The account agreement contained an arbitration provision requiring either party to submit claims between them to arbitration.  Yet rather than proceed to arbitration, Plaintiff filed this lawsuit against Comenity in federal court.  This is so even though her claims against Comenity fall squarely within the scope of the arbitration provision.  For these reasons, Plaintiff's claims must be pursued only in arbitration.  Comenity therefore moves for an order compelling Plaintiff to arbitrate her claims against Comenity and dismissing the claims against Comenity in their entirety.

## II. FACTUAL BACKGROUND

On or about September 7, 2017, Plaintiff opened a Torrid credit card account ending in "9336" (the "Account") with Comenity via the internet. (*See* Ex. 1, Declaration of Olimatta Strickland ("Strickland Decl."), ¶ 8.)  In connection with the transaction, Plaintiff was shown a copy of a Credit Card Agreement (the "Account Agreement") and was required to consent to its terms prior to submitting her application.  (Strickland Decl. ¶¶ 9-11 and Exhibit A thereto.) The Account Agreement included an arbitration provision ("Arbitration Provision").  (*See* Ex. A to Strickland Decl., ¶ I.) Once the application was approved, the Account was opened in Plaintiff's name and she was provided with her new account number and the credit limit on the Account. (Strickland Decl. ¶ 12.)

By consenting to the Account Agreement, Plaintiff agreed to arbitrate all disputes between the parties.  The Arbitration Provision is located in section I of the Agreement and states, in relevant part, as follows:

> **READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS**

**AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**

\*\*\*

**3. Covered Claims:** "Claim" means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. "Claim" includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. "Claim" has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). "Claim" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Provision or any part thereof (including, without limitation, the prohibition against class proceedings, private attorney general proceedings and/or multiple party proceedings described in Paragraph C.7 (the "Class Action Waiver"), the last sentence of Paragraph C.13 and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.

(Ex. A to Strickland Decl., ¶ I.)

Pursuant to Comenity's policies and procedures, a copy of the Account Agreement was mailed to Plaintiff at her address of record in Black Jack, Missouri. (Strickland Decl. ¶ 13.) Comenity has no record that the Account Agreement was returned as undeliverable. (*Id.*) The Arbitration Provision contains a notice of "[y]our right to reject" the Arbitration Provision. (Strickland Decl. ¶ 15 & Ex. A thereto.) Comenity's records reflect that Plaintiff did not provide notice of her rejection of the Arbitration Provision. (Strickland Decl. ¶ 15.) Plaintiff began using the credit card, and she made her last purchase on the Account on August 12, 2020 and her last payment on the Account on August 10, 2020. (Strickland Decl. ¶ 17 & Ex. C thereto.)

On August 19, 2020, Plaintiff filed a Complaint in the United States District Court for the Eastern District of Missouri. (*See* Doc. No. 1.) In the Complaint, Plaintiff asserts two claims

against Comenity under the Fair Credit Reporting Act ("FCRA"). Because both claims are subject to the Arbitration Provision signed by Plaintiff, Comenity moves to compel arbitration in this matter.

### III. ARGUMENT

Under the facts set forth above, federal and state law mandates enforcement of the Arbitration Provision. For the following reasons, Plaintiff's claims against Comenity must be compelled to arbitration.

**A.    The FAA Governs Enforcement of the Arbitration Provision.**

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006) ("Section 2 [of the FAA] embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ("Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written . . . ."). The Supreme Court has repeatedly recognized the scope of the FAA is extremely broad and that it applies to any transaction directly or indirectly affecting interstate commerce. *See, e.g., Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

The FAA promotes a "liberal federal policy favoring arbitration agreements," and for this reason "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *AT&T Mobility LLC*, 563 U.S. at 339. The Supreme Court has recognized that the

"'principal 'purpose' of the Act is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC,* 563 U.S. at 344; *see also Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) (citations omitted). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration." *Dean Witter Reynolds, Inc.,* 470 U.S. at 218.

By consenting to bilateral arbitration, the "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 559 U.S. at 685 (citations omitted). Thus, "parties may agree to limit the issues subject to arbitration [citation], to arbitrate according to specific rules [citation], and to limit with whom a party will arbitrate its disputes [citation]." *AT&T Mobility LLC*, 563 U.S. at 334 (citations omitted). Ultimately, "[i]t falls to courts and arbitrators to give effect to these contractual limitations, and when doing so, courts and arbitrators must not lose sight of the purpose of the exercise: to give effect to the intent of the parties." *Stolt-Nielsen*, 559 U.S. at 684.

Here, Plaintiff expressly agreed that the FAA governed the Arbitration Provision, and that it would apply when resolving claims through arbitration:

> **9. Governing Law**: **This Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law. The arbitrator must apply applicable substantive law consistent with the FAA and applicable statutes of limitations and claims of privilege recognized at law. . . .**

(*See* Strickland Decl., Exhibit A thereto, ¶ I.C.9).[1]  Under the FAA, courts throughout the country, including the United States Supreme Court, routinely enforce arbitration agreements in

---

[1] Because funding for Plaintiff's credit card came from Comenity Bank, a Delaware state bank with its principal place of business in Delaware, to Plaintiff, a resident of Missouri, the transaction here clearly involves interstate commerce. *See* Strickland Decl. ¶¶ 4, 6; *see also Barker v. Golf U.S.A., Inc.*, 154 F.3d 788, 790-91 (8th

consumer contracts like the one here. *See, e.g., CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 132 S. Ct. 665 (2012) (credit card agreement); *AT&T Mobility LLC*, 563 U.S. 333, (cell phone services contract); *Buckeye Check Cashing, Inc.* 546 U.S. 440 (consumer loan agreement); *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) (finance contract for purchase of mobile home); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (home improvement loan).

  **B.** **Comenity's Arbitration Provision is Consistently Enforced by Federal Courts Across the Country.**

  Importantly, the Arbitration Provision is identical to, or nearly identical to, that in other credit card agreements of Comenity and its affiliate affiliates/predecessors (including World Financial Network Bank and Alliance Data Systems Corp.) where motions to compel arbitration have consistently been granted. *See Dotson v. Midland Funding, LLC*, No. 18-cv-16253, 2019 WL 5678371, at *7 (Aug. 1, 2019), *Report and Recommendation Granted*, 2020 WL 291537 (D.N.J Jan. 21, 2020) (granting assignee's motion to compel arbitration based upon Comenity Capital Bank arbitration provision in credit card agreement); *Clemons v. Midland Credit Mgmt., Inc.*, No. 1:18-cv-16883-NHL-AMD, 2019 WL 3336421, at *5-6 (D.N.J. July 25, 2019) (granting assignee's motion to compel arbitration based upon arbitration provision contained within a Comenity Bank credit card agreement); *Jackson v. Comenity Bank*, No 16-1133 (DSD/SER), 2016 WL 6093477 (D. Minn. Oct. 18, 2016) (compelling arbitration of Telephone Consumer Protection Act (TCPA) claim because a valid credit card agreement existed between the parties that contained an arbitration provision and the plaintiff has failed to reject its terms); *Zarandi v. Alliance Data Sys. Corp.*, No. CV 10-8309 DSF (JCGx), 2011 WL 1827228 (C.D.

---

Cir. 1998) (holding that agreement involved interstate commerce because parties were located in different states and "the agreement contemplates the transfer of inventory and money between the states."); *Kates v. Chad Franklin Nat'l Auto Sales N., LLC*, No. 08-0384-CV-W-FJG, 2008 WL 5145942, at *3 n.3 (W.D. Mo. Dec. 1, 2008) (finding the transaction at issue "was a matter of interstate commerce," noting that a Texas lender provided funds to a Missouri resident).

Cal. May 9, 2011) (granting similar motion to compel arbitration); *Clemens v. Alliance Data Sys. Corp.*, Case No. 11-C-36 (E.D. Wis. Oct. 12, 2011) (same).  In numerous other cases, opposing parties and the court recognized the enforceability of the arbitration provision where the motion to compel was unopposed, joined, or not even required. *See, e.g., Thomas v. Comenity LLC, et al.*, No. 8:17-cv-02494-VMC-TGW, Docs. 29, 35 (M.D. Fla. Feb. 19, 2018) (unopposed motion to compel arbitration); *Barnauskas v. Comenity Bank*, No. 3:17-cv-01121-RDM, Docs. 12, 21 and 22 (M.D. Pa. Oct. 17, 2017) (granting motion to compel arbitration after notice of no opposition by opposing party); *Greene v. Comenity LLC*, No. 5:17-cv-00001-PGB-PRL, Doc. 17 (M.D. Fla. May 1, 2017) (unopposed motion to compel arbitration); *Frazier v. Comenity LLC*, No. 1:16-cv-25361-FAM, Doc. 25 (S.D. Fla. Apr. 28, 2017) (voluntary agreement to compel arbitration following filing of motion to compel arbitration); *Draga v. Comenity Bank Corp.*, No. 1:16-cv-02645-WTL-MPB, Docs. 12 and 14 (S.D. Ind. Nov. 8, 2016) (voluntary dismissal to pursue arbitration following filing of motion to compel arbitration).

   **C.** **The Prerequisites Under the FAA for Enforcement of Arbitration Agreements Are Satisfied.**

In reviewing a motion to compel arbitration, courts "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement."  *Robinson v. EOR–ARK, LLC*, 841 F.3d 781, 783–84 (8th Cir. 2016) (internal quotations omitted).  "[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants; if an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) (citation omitted).  "If the parties have a valid arbitration agreement that encompasses the

dispute, a motion to compel arbitration must be granted." *Robinson*, 841 F.3d at 784. As discussed below, both of these elements are satisfied here.

> 1. **A Valid Arbitration Agreement Exists Between Plaintiff and Comenity.**

State contract law governs whether the parties have entered into a valid agreement to arbitrate a particular matter. *See Karzon v. AT&T, Inc.*, No. 4:13-CV-2202 (CEJ), 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014). "Under Missouri law, the basic elements of a contract are offer, acceptance of that offer, and consideration to support the contract." *Id.* "The party seeking to compel arbitration bears the burden of proving the existence of a valid and enforceable arbitration agreement." *Driver v. BPV Market Place Inv'rs, L.L.C.*, No. 4:17-CV-1607 CAS, 2018 WL 3363795, at *4 (E.D. Mo. July 10, 2018).

Offer and acceptance require a mutual agreement. *See Youngs v. Conley*, 505 S.W.3d 305, 313 (Mo. Ct. App. 2016). "A mutual agreement is reached when 'the minds of the contracting parties [ ] meet upon and assent to the same thing in the same sense at the same time.'" *Id.* at 314 (quoting *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. Ct. App. 2012)). "Whether there exists mutual assent sufficient to form a contract is dependent upon the *objective* intentions of the parties. The parties' intentions are manifested by reviewing the parties' actions and words." *TWC Admin. LLC v. Cathey*, No. 4:17-CV-00235-BCW, 2017 WL 2895107, at *1 (W.D. Mo. July 6, 2017) (quoting *Jackson v. Higher Educ. Loan Auth. of Mo.*, 497 S.W.3d 283, 289 (Mo. Ct. App. 2016)).

The use of a credit card amounts to acceptance of the cardholder agreement. *See Fahey v. U.S. Bank Nat'l Ass'n*, No. 4:05CV01453 FRB, 2006 WL 2850529, at *2 (E.D. Mo. 2006) (rejecting plaintiff's argument that defendant must produce application or other document bearing plaintiff's signature). Here, the evidence shows that Comenity mailed the Account

Agreement to Plaintiff at her address of record in Black Jack, Missouri.  (Strickland Decl. ¶ 13.)  Comenity has no record that the Account Agreement was returned as undeliverable.  (*Id.*)  The Arbitration Provision contains a notice of "[y]our right to reject" the Arbitration Provision.  (Strickland Decl. ¶ 15 & Ex. A thereto.)  Comenity's records reflect that Plaintiff did not provide notice of her rejection of the Arbitration Provision.  (Strickland Decl. ¶ 15.)  Plaintiff began using the credit card, and she made her last purchase on the Account on August 12, 2020 and her last payment on the Account on August 10, 2020.  (Strickland Decl. ¶ 17 & Ex. C thereto.)  Plaintiff and Comenity even contractually agreed that "[y]our use of the account, or failure to close the account within the 30 days of receiving this document, indicates your acceptance of the terms of this agreement."  (*See* Ex. A to Strickland Decl., p. 1.)  Accordingly, by receiving and using the credit card, Plaintiff accepted the terms of the Agreement, including the Arbitration Provision.  *See Fahey*, 2006 WL 2850529 at *2 ("The evidence submitted by U.S. Bank shows that the two credit card accounts in question were issued to both plaintiff and his former wife as co-obligors, that the terms, including the arbitration clause, were provided to plaintiff and his former wife. It is further clear that both of the cards were used. The use of the cards amounts to acceptance of the terms of the cardholder agreements.").

As for consideration, "[c]onsideration generally consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Karzon*, 2014 WL 51331, at *3 (quoting *Marzette v. Anheuser–Busch, Inc.*, 371 S.W.3d 49, 52 (Mo. Ct. App. 2012)).  "Generally, if a contract contains mutual promises, such that a legal duty or liability is imposed on each party as a promisor to the other party as a promisee, the contract is a bilateral contract supported by sufficient consideration." *Id.* (quoting *Marzette*, 371 S.W.3d at 53).  "A promise is binding rather than illusory if neither 'party retains the unilateral

ability to avoid its contractual obligations.'"  *Colton v. Hibbett Sporting Goods, Inc.*, No. 2:16-cv-04002-NKL, 2016 WL 3248578, at *3 (W.D. Mo. June 13, 2016) (citation omitted).

The Contract here is supported by bargained-for consideration, as under the arbitration provision, **both** parties agreed that, except for matters asserted in small-claims court, any dispute between the parties is subject to arbitration.  *See Credit Acceptance Corp. v. Niemeier*, No. 4:15-CV-555-CEJ, 2015 WL 4207122, at *2 (E.D. Mo. July 10, 2015) ("First, the agreement explicitly states that either party can compel arbitration when there is a 'dispute.' Thus both parties are giving up something (their right to come to court) if either party invokes the arbitration agreement in a 'dispute.' That is mutual consideration."); *see also Strain v. Murphy Oil USA, Inc.*, No. 6:15-cv-3246-MDH, 2016 WL 540810, at *5 (W.D. Mo. Feb. 9, 2016) (parties' agreement to arbitrate, which contained mutual promises to arbitrate that applied equally to both parties, constituted sufficient consideration). This provision constitutes mutuality of obligation.  *See Franklin v. Cracker Barrel Old Country Store*, No. 4:17-CV-00289-JMB, 2017 WL 7691757, at *5 (E.D. Mo. Apr. 12, 2017) ("In this case, there is consideration in the form of the parties' mutual promises to arbitrate claims against one another. Franklin's consideration in the Arbitration Agreement is obvious-she is agreeing to pursue essentially any monetary claims against Cracker Barrel (and its employees) in arbitration rather than open court. Cracker Barrel, in turn, has promised essentially the same thing.").  In sum, a valid arbitration agreement exists between Plaintiff and Comenity under Missouri law.

      **2.**      **The Broad Language in the Arbitration Provision Covers the Present Dispute.**

Next, the parties' Arbitration Provision is unquestionably broad enough in scope to encompass Plaintiff's FCRA claims.  In determining whether a dispute falls within the scope of an arbitration clause, a Court must "construe[ ] the clause liberally, resolving any doubts in favor

of arbitration . . . 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (quoting *MedCam, Inc. v. MCNC*, 414 F.3d 972, 975 (8th Cir. 2005)).  Further, to exclude a claim from arbitration, there must be an express provision within the original contract between the parties that excludes a particular grievance. *See United Steelworkers of Am. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960).  Whenever a court considers the scope of an arbitration clause, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."  *Volt Info. Scis., Inc. v. Bd. Trs. Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

When considering whether an arbitration clause covers the dispute at issue, "the first question is 'whether the arbitration clause is broad or narrow.'"  *Parm*, 898 F.3d at 874 (quoting *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 818 (8th Cir. 2015)).  "If the clause is broad, the 'liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision.'" *Unison Co.*, 789 F.3d at 818 (quoting *3M Co.*, 542 F.3d at 1199 (quotations and internal citation omitted)).

The Arbitration Provision here is unquestionably broad enough in scope to "simply touch" Plaintiff's FCRA claims against Comenity.  The Arbitration Provision here broadly covers any "Claim," and the word "'Claim' means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account."  (Ex. A to Strickland Decl., ¶ I.C.3.)  The word "Claim" also "has the broadest possible meaning, and includes initial claims,

counterclaims, cross-claims and third-party claims." (*Id.*)  Thus, this is a "broad" arbitration clause.  *See PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836–37 (8th Cir. 2010) (finding arbitration clause covering "all disputes arising under" the agreement was "generally broad" in scope and holding that arbitration may be compelled "as long as the underlying factual allegations simply touch matters covered by the arbitration provision"); *3M Co.*, 542 F.3d at 1199 (implying that clauses requiring arbitration of "any" or "all" disputes should be interpreted extensively).  The Eighth Circuit has determined that similarly broad arbitration provisions cover any claim arising between the parties.  *See MedCam, Inc.*, 414 F.3d at 976 ("The Agreement contains a broadly worded arbitration clause covering *all* disputes arising from the Agreement. Because MedCam's claims arise from the Agreement, they are subject to binding arbitration under the arbitration clause."); *see also ATG Sports Indus., Inc. v. Allsynthetic Grp., Inc.*, No. 12-00187-CV-W-SOW, 2013 WL 12204308, at *3 (W.D. Mo. Feb. 4, 2013) (finding plaintiff's breach of contract claim "falls squarely within the scope of the broad arbitration clause" stating that the parties agreed to compel "*all* disputes" to arbitration").

      Plaintiff's FCRA claims against Comenity here arise out of an agreement Plaintiff signed to obtain a credit card.  Specifically, Plaintiff alleges that Comenity negligently and willfully violated FCRA by failing to conduct a proper investigation of Plaintiff's dispute and by failing to review all relevant information available to it.  (*See* Compl. ¶¶ 76-77, 83-84.)  Plaintiff's FCRA claims fall squarely within the broad scope of the Arbitration Provision, as she challenges the status of the account, which was created by the Account Agreement itself.  *See Young v. CitiFinancial Serv. LLC*, No. 4:16-CV-1171-CDP, 2017 WL 476426, at *2 (E.D. Mo. Feb. 6, 2017) (finding plaintiff's FCRA claim "fall[s] squarely within the scope of the claims subject to the arbitration agreement" when scope of arbitration agreement covered "any Claim"); *Colton*,

2016 WL 3248578, at *4 (compelling FCRA claim to arbitration when arbitration provision applied to "all legal disputes").  Moreover, the Account Agreement specifically allows Comenity to report information regarding her Account to the credit reporting agencies:

> **F. Disputes and Reporting to Consumer Reporting Agencies**
>
> \*\*\*
>
> **Credit report disputes**
>
> If you believe the Account information we reported to a consumer reporting agency is inaccurate, you may submit a direct dispute to Comenity Bank, PO Box 182789, Columbus, Ohio 43218-2789.
>
> Your written dispute must provide sufficient information to identify the Account and specify why the information is inaccurate:
>
> · Account Information: Your name and Account number
> · Contact Information: Your address and telephone number
> · Disputed Information: Identify the Account information disputed and explain why you believe it is inaccurate
> · Supporting Documentation: If available, provide a copy of the section of the credit report showing the Account information you are disputing
>
> We will investigate the disputed information and report the results to you within 30 days of receipt of the information needed for our investigation. If we find that the Account information we reported is inaccurate, we will promptly provide the necessary correction to each consumer reporting agency to which we reported the information.

(Exhibit A to Strickland Decl., ¶ F.)

Thus, Plaintiff certainly cannot show "with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  As a result, Plaintiff's FCRA claims against Comenity are covered by the Arbitration Provision and must be arbitrated. *See Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 988-89 (D. Minn. 2009) ("This argument overlooks the reality that courts across the country have enforced arbitration clauses in connection with claims brought under the Fair Credit Reporting Act ('FCRA')").

### D.     Plaintiff's Claims Against Comenity Should Be Dismissed.

Not only should this Court compel the arbitration of Plaintiff's claims against Comenity, but it should also dismiss Plaintiff's claims against Comenity in this action.  While the Federal Arbitration Act states that a court should stay an action subject to arbitration rather than dismissing it, the Eighth Circuit has "recognized that district courts sometimes rely upon 'a judicially-created exception to the general rule which indicates district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'"  *Saddler v. Carvana, LLC*, No. 4:20-cv-105-HEA, 2020 WL 4596923, at *4 (E.D. Mo. Aug. 11, 2020) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)).  In light of this guidance, district courts within the Eighth Circuit frequently dismiss claims that are fully covered by an arbitration provision.  *See, e.g.*, *id.* ("Here, the entire controversy will be decided by arbitration.  Thus, the Court will compel arbitration and dismiss the action."); *Rothman Furniture Stores, Inc. v. Everest Software, Inc.*, No. 4:10–CV–848–CDP, 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010) ("[W]here all of the issues raised in the Complaint must be submitted to arbitration in accordance with a valid and enforceable arbitration agreement, most courts agree that dismissal of the cause, rather than imposing a stay, is appropriate."); *see also Cahill v. Alternative Wines, Inc.*, No. 12-CV-110-LRR, 2013 WL 427396, at *6 (N.D. Iowa Feb. 4, 2013) (collecting cases).

As discussed above, Plaintiff's FCRA claims against Comenity—the only claims Plaintiff has asserted against Comenity —are covered by the parties' arbitration agreement. Accordingly, because the entire controversy between Plaintiff and Comenity will be resolved in arbitration, this Court should compel Plaintiff's claims against Comenity to arbitration and dismiss the claims asserted against Comenity.  *See Strain*, 2016 WL 540810, at *6 ("Here, the Court finds no purpose to staying this case.  It appears all of Plaintiff's claims are subject to the arbitration

agreement and therefore will be resolved by arbitration after the dismissal of this action."); *Baker v. Auto Stop, Inc.*, No. 4:12-cv-355(CEJ), 2012 WL 13065770, at *1 (E.D. Mo. Sept. 10, 2012) ("However, because the parties have agreed to binding arbitration of the claims asserted in this lawsuit, no purpose would be served by staying the proceedings in this case. Therefore, the motion for a stay will be denied, and this action will be dismissed.").

E. **If This Court Determines that the Making of the Arbitration Provision is at Issue, Comenity Requests a Trial Pursuant to 9 U.S.C. § 4.**

Comenity has set forth undisputed evidence that a binding Arbitration Provision exists between the parties. However, if Plaintiff claims that no valid agreement exists, the Court refuses to enforce the delegation clause, and this Court believes there is a disputed issue regarding the existence of a valid agreement, 9 U.S.C. § 4 requires a trial on this issue alone:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.

9 U.S.C. § 4.

## IV. CONCLUSION

As shown above, Plaintiff should be compelled to arbitrate her claims against Comenity, and Plaintiff's claims against Comenity should be dismissed. A valid arbitration agreement exists between the parties that unquestionably covers the dispute at issue. Accordingly, Comenity respectfully requests that this Court compel Plaintiff's claim against Comenity to arbitration and dismiss Plaintiff's claims against Comenity.

Respectfully submitted this 12th day of October, 2020.

/s/ Ryan S. Rummage
Ryan S. Rummage (Missouri Bar No. 69871)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rrummage@burr.com

Attorney for Defendant
COMENITY, LLC

**CERTIFICATE OF SERVICE**

    I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing on all counsel of record on this the 12th day of October, 2020:

                                      *s/ Ryan S. Rummage*
                                      OF COUNSEL