IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CASSIE GREEN a.k.a<br>CASSIE HAYES-MCDONALD,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES,<br>LLC; AMERICOLLECT, INC.;<br>PENNSYLVANIA HIGHER EDUCATION<br>ASSISTANCE AGENCY PARENTS'<br>ASSOCIATION, INC.; FIRST PREMIER<br>BANK; BARCLAYS BANK DELAWARE;<br>ALLY FINANCIAL, INC.; AND COMENITY,<br>LLC,<br><br>    Defendants. | CIVIL ACTION NO.<br>4:20-CV-01096 |

**DEFENDANT COMENITY, LLC'S REPLY SUGGESTIONS IN SUPPORT OF
MOTION TO COMPEL ARBITRATION AND TO DISMISS**

Defendant Comenity, LLC ("Comenity") hereby submits its Reply Suggestions in Support of its Motion to Compel Arbitration and to Dismiss, stating as follows:

**I. INTRODUCTION**

In response to Comenity's Motion to Compel Arbitration, Plaintiff provides a self-serving Declaration stating that she did not receive the credit card agreement ("Account Agreement") at issue. This is irrelevant, as Plaintiff's use of the card for three years establishes her assent to the terms of the Account Agreement. Plaintiff also does not defeat the presumption that Comenity sent her the Account Agreement according to its policies and procedures, nor did Plaintiff opt out of the arbitration provision ("Arbitration Provision") contained within the Account Agreement. Plaintiff also argues that the Account Agreement is unconscionable, but this challenge must be submitted to the arbitrator under the parties' delegation provision. Even if the Court addresses

44464113 v1

this argument, the Account Agreement and Arbitration Provision are nearly identical to agreements that courts in Missouri have upheld time and time again. As a result, Comenity asks the Court to compel Plaintiff's claims against Comenity to arbitration and dismiss Comenity from this matter.

## II. ARGUMENT

### A. Plaintiff Assented to the Credit Card Agreement by Using the Credit Card.

Plaintiff states that she never assented to the terms of the Arbitration Provision, arguing that (1) she never received the Account Agreement and (2) Comenity should not be entitled to the presumption of the "mailbox rule." Both arguments fail.

First, Plaintiff's argument that she did not assent to the Arbitration Provision because she did not receive the Account Agreement is irrelevant because the use of a credit card amounts to acceptance of the cardholder agreement. *See Fahey v. U.S. Bank Nat'l Ass'n*, No. 4:05CV01453 FRB, 2006 WL 2850529, at *2 (E.D. Mo. 2006) (rejecting plaintiff's argument that defendant must produce an application or other document bearing plaintiff's signature). Here, the evidence shows that Plaintiff used her Torrid credit card for years. Plaintiff opened the Account on September 7, 2017, made her last purchase on the Account on August 12, 2020, and made her last payment on the Account on August 10, 2020. (Strickland Decl. ¶ 17 & Ex. C thereto.) Plaintiff does not even respond to Comenity's case law establishing that the use of a credit card constitutes acceptance of a cardholder agreement. Thus, by using the credit card, Plaintiff accepted the terms of the Agreement, including the Arbitration Provision and delegation provision. *See Fahey*, 2006 WL 2850529 at *2 ("The evidence submitted by U.S. Bank shows that the two credit card accounts in question were issued to both plaintiff and his former wife as co-obligors, that the terms, including the arbitration clause, were provided to plaintiff and his former wife. It is further clear that both of the cards were used. The use of the cards amounts to

acceptance of the terms of the cardholder agreements."); *Pleasants v. Am. Express Co.*, No. 4:06-CV-1516(CEJ), 2007 WL 2407010, at *3 (E.D. Mo. Aug. 17, 2007) ("The use of the cards amounted to acceptance of the card's terms and conditions.").

Second, Plaintiff argues that Comenity should not be entitled to the presumption created by the mailbox rule, but as discussed above, this argument is inapposite because Plaintiff's assent to the Account Agreement is shown by her continued use of the Torrid credit card. Even so, Plaintiff's argument that Comenity should not be entitled to the mailbox rule because it sent two recent pieces of mail to her attorney in recent months does not impact whether Comenity sent the credit card agreement to Plaintiff <u>three years ago</u> when Plaintiff opened the account at issue in September 2017. Indeed, it would be foolish for Comenity not to now send these communications to Plaintiff's counsel, as communicating with a consumer after being informed the consumer is represented by counsel can cause problems of its own. *See* 15 U.S.C. § 1692c(a)(2) (prohibiting communicating with a consumer with knowledge that the consumer is represented by an attorney);[1] *see also* Mo. Sup. Ct. Rule 4-4.2 (prohibiting communications with those who are represented by counsel without consent or authorization to do so).

Further, Plaintiff has submitted no evidence to contradict Comenity's evidence that it mailed a copy of the Account Agreement to her when she opened the Torrid Account and her conclusory statement that she never received it does not suffice. *See Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 987 (D. Minn. 2009) ("The combination of Wold's performance of the contract (paying off his debt to DFS) with a presumption that 'a properly mailed document is received by the addressee,' leads this Court to find that a valid arbitration agreement did exist between Wold and DFS." (quoting *Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004)).

---

[1] Although Comenity is not a "debt collector" under the FDCPA, it is common to communicate directly with a consumer's attorney as a good business practice and out of an abundance of caution.

By providing testimony that Comenity sent the Account Agreement to Plaintiff as part of a Welcome Kit pursuant to its policies and procedures and that Comenity did not receive any record that the Welcome Kit or credit card agreement were returned as undeliverable, (Strickland Decl. ¶ 13), Comenity has "created a presumption that plaintiff received the arbitration clause." *Pleasants*, 2007 WL 2407010, at *3.  Plaintiff's conclusory statement that she did not receive the Account Agreement at the time she opened the account at issue does not defeat Comenity's Motion to Compel Arbitration.  *See Wold*, 598 F. Supp. 2d at 987 ("Denial of receipt of an agreement with an arbitration clause is not sufficient to overcome the presumption of receipt."); *Pleasants*, 2007 WL 2407010, at *3.[2]

In sum, Plaintiff's assent to the Account Agreement—and Arbitration Provision—is evidenced by Plaintiff's use of the Torrid credit card at issue.  Additionally, Plaintiff has provided no evidence to overcome the presumption that Comenity sent her the Account Agreement containing the Arbitration Provision in accordance with its policies and procedures.  As a result, Plaintiff is required to arbitrate her disputes with Comenity.

### B.  Any Challenge to the Account Agreement as a Whole Must Be Submitted to the Arbitrator.

Plaintiff argues that the "arbitration agreement is not a valid contract." (Resp. at 3.) Plaintiff does not deny that she opened a Torrid credit card account, only that the Account Agreement as a whole is invalid because she never received the Account Agreement and did not agree to arbitrate her claims against Comenity.

---

[2] Plaintiff also did not opt-out of the Arbitration Provision after receiving the Account Agreement.  (*See* Strickland Decl. ¶ 13.)  Plaintiff's failure to opt-out is yet additional evidence that she accepted the Arbitration Provision.  *See Lee v. Burlington Coat Factory of Mo., LLC*, No. 4:17-cv-02467-AGF, 2018 WL 1410235, at *4 (E.D. Mo. Mar. 21, 2018) ("Plaintiff accepted the offer to enter the Arbitration Agreement by failing to timely opt out. . . . By failing to timely opt out, Plaintiff manifested his acceptance of the Arbitration Agreement's terms."); *Karzon v. AT & T, Inc.*, No. 4:13–CV–2202 CEJ, 2014 WL 51331, at *2 (E.D. Mo. Jan. 7, 2014) ("By failing to opt out, he affirmatively accepted the arbitration agreement [under Missouri law].").

Plaintiff's arguments related to the validity of the Account Agreement must be submitted to the Arbitrator.  The Account Agreement specifies that "any dispute or argument that concerns the ***validity or enforceability of the Agreement as a whole*** is for the arbitrator, not a court, to decide." (*See* Ex. A to Strickland Decl. (emphasis added)).  The Supreme Court has upheld these so-called "delegation provisions" as valid, noting that challenges to an agreement as a whole—and not specifically to an agreement's delegation provision—must be decided by an Arbitrator, not a court.  *See Rent-A-Ctr., West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) ("[B]ecause respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract.  The challenge should therefore be considered by an arbitrator, not a court.").

When faced with a delegation provision, "the only question the Court may endeavor to answer at the outset is whether the delegation provision is valid, or whether, as Plaintiff argues, the delegation provision itself is unconscionable and must be voided.  If the delegation provision is valid as a matter of law, all other issues raised in the case should not be addressed, and the Court's only role will be to enter an order compelling arbitration." *Jones v. Titlemax of Mo., Inc.*, No. 4:15-cv-01361-JAR, 2016 WL 4158886, at *4 (E.D. Mo. Aug. 5, 2016).  Indeed, "[w]here there is a validly formed contract that contains a delegation provision, the Court must stay the case and refer the matter to arbitration pursuant to the contract." *Driver v. BPV Market Place Invs., L.L.C.*, No. 4:17-CV-1607 CAS, 2018 WL 3363795, at *5.  And a plaintiff cannot avoid such a provision without specifically attacking the validity of the delegation clause: "If the party resisting arbitration does not challenge the enforceability of a delegation provision, 'the only question for a court faced with a motion to compel arbitration is whether the delegation provision

clearly and unmistakably delegated authority to the arbitrator to determine issues of arbitrability.'" *Id.*, 2018 WL 3363795, at *5 (quoting *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 606 (Mo. Ct. App. 2015)).

Plaintiff has made no such specific challenge here.  Absent a specific, valid attack as to the enforceability of the delegation clause itself, the plain language of the Arbitration Provision, including the delegation clause, must control.  *See id.* ("Therefore, unless plaintiff challenges the delegation clause specifically, the Court must treat it as valid under § 2 of the FAA, and enforce it under §§ 3 and 4, 'leaving any challenge to the validity of the Agreement as whole for the arbitrator.'" (quoting *Rent-A-Center*, 561 U.S. at 72)); *Jones*, 2016 WL 4158886, at *5 ("Thus, the Court determines that the delegation provision is valid, and must refer to arbitration any dispute about the validity and applicability of the Arbitration Provision.")  Because Plaintiff does not challenge the delegation clause specifically, her challenge as to the validity of the contract as a whole must be reserved for the Arbitrator.  *See Driver*, 2018 WL 3363795, at *6 ("The Agreement's delegation clause grants the arbitrator exclusive authority to resolve any dispute relating to the Agreement's applicability.  Because plaintiff does not challenge the delegation provision specifically, the Court must treat it as valid, and leave plaintiff's applicability challenge to the arbitrator."); *see also Jaber v. GC Servs. Limited P'ship*, No. 4:19CV1764 JCH, 2020 WL 1170237, at *4 (E.D. Mo. Mar. 11, 2020) ("Plaintiff here does not challenge the provision of the Agreement that delegates the authority to resolve issues of arbitrability to the arbitrator.  Thus, it is for the arbitrator to determine the validity of the arbitration agreement as a whole."); *Wallace v. Commc'ns Unlimited, Inc.*, No. 4:18-cv-00503-JAR, 2019 WL 1001701, at *6 (E.D. Mo. Mar. 1, 2019) ("The Court concludes that Plaintiffs have not shown that the delegation provision in

the Agreement is invalid. As such, 'the Court's only role will be to enter an order compelling arbitration.'" (citation omitted)).

### C. Plaintiff's Unconscionability Argument Must Be Submitted to the Arbitrator.

Plaintiff next argues that the Account Agreement at issue is unconscionable. (Resp. at 5-6.) As stated above, however, this argument must be submitted to the Arbitrator pursuant to the parties' delegation clause. *See Troia v. Tinder, Inc.*, No. 4:19-CV-1647 RLW, 2020 WL 619855, at *4 (E.D. Mo. Feb. 10, 2020) (finding that the "issue of unconscionability is for the arbitrator, not the Court, to decide" pursuant to the parties' delegation clause).

Even if this Court were to consider Plaintiff's unconscionability argument, neither the Account Agreement nor the Arbitration Provision is unconscionable.[3] The Eighth Circuit recently discussed the standard that *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) and *Brewer v. Missouri Title Loans*, 364 S.W.3d 486 (Mo. 2012) have established for reviewing unconscionability in Missouri:

> Missouri courts have traditionally viewed unconscionability in the context of procedural unconscionability, *i.e.*, the formalities of making the contract, and substantive unconscionability, *i.e.*, the terms set forth in the contract. But because *Concepcion* "dictate[d] a review" limited to "whether state law defenses such as unconscionability impact the formation of a contract," the court's analysis would no longer focus on the traditional distinction between procedural and substantive unconscionability and would instead be "limited to a discussion of facts relating to unconscionability impacting the formation of the contract." *Brewer v. Missouri Title Loans*, 364 S.W.3d 486, 492 n. 3 (Mo. 2012) (emphasis in original). The [*Brewer*] court went on to instruct that in future cases, Missouri courts "shall limit review of the defense of unconscionability to the context of its relevance to contract formation." *Id.*

*Torres v. Simpatico, Inc.*, 781 F.3d 963, 968-69 (8th Cir. 2015). "Missouri courts have described an unconscionable agreement as one in which 'no man in his senses and not under delusion

---

[3] Plaintiff does not clearly state whether it is the Account Agreement or the Arbitration Provision that is allegedly unconscionable. No matter, as neither is unconscionable.

would make, on the one hand, and as no honest and fair man would accept on the other.'" *Cicle v. Chase Bank USA*, 583 F.3d 549, 554 (8th Cir. 2009) (citations omitted).

  Plaintiff asserts unconscionability arguments that have been rejected time and time again in Missouri.  Plaintiff first argues that the Arbitration Provision is unconscionable because it is a contract of adhesion, but the Supreme Court of Missouri has held that "lack of negotiation and the adhesive nature of a contractual agreement are factors to consider in determining unconscionability, but 'post-*Concepcion*, a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally.'"  *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809-10 (Mo. 2015) (internal citations omitted).  Additionally, the fact that Comenity used a standard agreement does not make it unconscionable.  *See Jones*, 2016 WL 4158886, at *6 (noting that the arbitration provision's "use of bold and underlined print and its repeated statements regarding the waiver of rights indicate that it was not beyond the grasp of a person of reasonable capability").

  Plaintiff's argument about the size of the font and location of the Arbitration Provision are also unpersuasive, as the Arbitration Provision is clearly set out in the Account Agreement using bold font and all caps.  The heading of the Arbitration Provision is in bold font and is larger than the text of the language of the Arbitration Provision.  The Arbitration Provision also states—in bold font and in all caps—that the consumer should "**READ THIS ARBITRATION PROVISION CAREFULLY**" and that the Arbitration Provision will impact dispute resolution between the parties "**IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW.**"  Paragraph C.1.—also in bold font—provides the method for a consumer to reject the arbitration provision.

Plaintiff's arguments regarding the font size and contents of the Arbitration Provision are the same type of arguments that have been repeatedly rejected in Missouri. *See Jones*, 2016 WL 4158886, at *5 (finding that the agreement's "use of bold print and repeated statements explaining the nature of arbitration and the binding nature of the" arbitration provision at issue undermined plaintiff's unconscionability argument); *Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 939 (E.D. Mo. 2015) (finding that the agreement was not unconscionable when the language in the arbitration provision was "not unusually small, hidden, or concealed compared to the rest of the document" and was shown "in bold capital letters"); *Kenner v. Career Educ. Corp.*, No. 4:11CV00997 AGF, 2011 WL 5966922, at *4 (E.D. Mo. Nov. 29, 2011) ("The Court concludes that the arbitration clause in this case is not procedurally unconscionable.  As noted above, the clause is one of several terms in the Enrollment Agreement, not buried in fine print, but in the same clear font style and size as other terms, with the words, 'Dispute Resolution' in bold."); *see also Cicle*, 583 F.3d at 554 (noting with approval the agreement's use of "all-uppercase font explaining the litigation rights that were being waived by acceptance and use of the card").  While Plaintiff does not even argue that the Arbitration Provision is substantively unconscionable, the Court need not consider substantive unconscionability since the Arbitration Provision is not procedurally unconscionable.  *See Kenner*, 2011 WL 5966922, at *4. Accordingly, neither the Account Agreement nor the Arbitration Provision at issue are unconscionable.

### D.      Plaintiff's Claims Against Comenity Should Be Dismissed.

Next, Plaintiff argues that if the Court grants Comenity's Motion to Compel Arbitration, the Court should not dismiss Comenity.  Courts may dismiss a party from a lawsuit after compelling arbitration if "it is clear the entire controversy between the parties will be resolved by arbitration." *Saddler v. Carvana, LLC*, No. 4:20-cv-105-HEA, 2020 WL 4596923, at *4 (E.D.

Mo. Aug. 11, 2020) (emphasis added) (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011)).  Because all of the claims between Plaintiff and Comenity are subject to arbitration, there is no reason for Comenity to remain in this lawsuit.

### E. If This Court Determines that the Making of the Arbitration Provision is at Issue, Comenity Requests a Trial Pursuant to 9 U.S.C. § 4.

If this Court were to find that the arguments proffered by Comenity are insufficient to determine the arbitrability of Plaintiff's claims raised in her Complaint, Comenity again reserves the issue of arbitrability for trial.  The FAA specifically permits that a trial may be held on the issue of assent to arbitration.  *See* 9 U.S.C. § 4 (stating that "[i]f the making of the arbitration agreement . . . be in issue, the party alleged to be in default may . . . demand a jury trial of such issue"); *see also Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F,3d 737, 743 (8th Cir. 2014).  Although Plaintiff has presented no evidence apart from a conclusory declaration stating that she did not assent to the credit card agreement at issue—even though she used the card for years—Comenity reserves its right to demand a trial on the issue of arbitrability should this Court decline to enforce the Account Agreement's delegation clause referring such disputes to an arbitrator.

### III. CONCLUSION

As shown above, Plaintiff should be compelled to arbitrate her claims against Comenity, and Plaintiff's claims against Comenity should be dismissed.  Plaintiff assented to the Arbitration Provision by using the Torrid credit card, and any challenges to whether the agreement is valid or unconscionable should be reserved for the Arbitrator.  For these reasons, Comenity respectfully requests that this Court compel Plaintiff's claim against Comenity to arbitration and dismiss Plaintiff's claims against Comenity.

Respectfully submitted this 4th day of November, 2020.

/s/ Ryan S. Rummage
Ryan S. Rummage (Missouri Bar No. 69871)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rrummage@burr.com

Attorney for Defendant
COMENITY, LLC

**CERTIFICATE OF SERVICE**

  I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing on all counsel of record on this the 4th day of November, 2020:

                */s/ Ryan S. Rummage*
                OF COUNSEL