UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CASSIE GREEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:20-cv-01096-SRC |
| | ) | |
| AMERICOLLECT, INC. et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |

### **Memorandum and Order**

Plaintiff Cassie Green disputed the accuracy of an Americollect tradeline appearing on her credit report with an unspecified party sometime before February 17, 2020. Defendant Americollect, Inc. reported the dispute to the credit reporting agencies and Green's credit report included an "account in dispute" notation next to the Americollect tradeline. Green later decided that she no longer disputed the tradeline and sent a letter to Equifax requesting that the "account in dispute" notation appearing on her credit report be removed. Americollect did not remove the notation, and Green seeks to hold Americollect liable for failing to update her credit report to reflect that she no longer disputed the debt. Americollect maintains that its failure to remove the notation following Green's so-called "dispute of the dispute" did not violate either the Fair Credit Reporting Act or the Fair Debt Collection Practices Act.

### I. Background

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citations omitted). To accomplish these goals, the FCRA "places

1

responsibilities on both consumer reporting agencies and furnishers of information . . . ." *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 915 (8th Cir. 2014) (citing 15 U.S.C. §§ 1681i, 1681s–2.). As relevant here, when a consumer disputes the accuracy or completeness of information appearing on her credit report directly to a credit reporting agency, the agency, within 30 days, must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file" if it is "found to be inaccurate, incomplete, or cannot be verified." 15 U.S.C. § 1681i(a)(1)(A), (5)(A); *see also McIvor*, 773 F.3d at 915. If, after receiving this dispute from the consumer, the credit reporting agency contacts the "furnisher of information" as part of this reinvestigation process, the furnisher must "conduct an investigation with respect to the disputed information" and report the results to the credit reporting agency. 15 U.S.C. § 1681s-2(b); *see also McIvor*, 773 F.3d at 915. Consumers may bring claims for negligent or willful violations of these investigative obligations. 15 U.S.C. §§ 1681n, 1681o; *McIvor*, 773 F.3d at 915.

Green filed suit against numerous parties, including Americollect, for purportedly violating the FCRA and FDCPA. Doc. 1. In her first-amended complaint, Green asserts three counts against Americollect: 1) negligent violation of 15 U.S.C § 1681s-2(b) of the FCRA; 2) willful violation of 15 U.S.C § 1681s-2(b) of the FCRA; and 3) violation of 15 U.S.C § 1692(e) of the FDCPA. Doc. 46 at ¶¶ 22-33, 110-16. After answering the amended complaint, Doc. 55, Americollect filed a motion for judgment on the pleadings. Doc. 67. With Green having filed her opposition, Doc. 70, and Americollect filing its reply, Doc. 73, the motion is now ripe for review.

## II. Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that after the pleadings are closed, a party may move for judgment on the pleadings. A motion under Rule 12(c) is determined by the same standards applied to a motion under Rule 12(b)(6). *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id*. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id*. at 556.

On a motion to dismiss, the court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *id*. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. at 550 U.S. at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept

as true all of the allegations contained in a complaint does not apply to legal conclusions, however. *Iqbal*, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, the pleader must support them with factual allegations. *Id*. at 679. The court reviews the plausibility of the plaintiff's claim "as a whole, not the plausibility of each individual allegation." *Zoltek Corp. v. Structural Polymer Group*, 592 F.3d 893, 896 n.4 (8th Cir. 2010).

"When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed. R. Civ. P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citations omitted); *see also Cent. Telecommunications, Inc. v. City of Jefferson City, Mo*., 589 F. Supp. 85, 91 (W.D. Mo. 1984) ("The scope of a court's inquiry on a Rule 12(b)(6) motion is limited to the pleadings.").

### III. Allegations

Green obtained her Equifax credit disclosure on February 17, 2020 and noticed the Americollect tradeline reporting a notation of "account[] in dispute." Doc. 46 at ¶ 12. Green no longer disputes the Americollect tradeline and submitted a letter to Equifax on March 24, 2020 requesting that the notation of "accounts in dispute" be removed. *Id*. at ¶¶ 11, 13. Equifax forwarded this letter to Americollect and Americollect received the letter. *Id*. at ¶ 14. After not receiving any investigation results from Equifax, Green obtained her credit disclosure on April

28, 2020,[1] which showed Americollect "failed or refused to remove the notation of 'accounts in dispute.'" *Id*. at ¶ 15.

In Count I, Green alleges that Americollect violated 15 U.S.C § 1681s-2(b) of the FCRA by negligently failing to conduct a proper investigation of her dispute "[a]fter being informed by Equifax of [her] consumer dispute of the erroneous notation." *Id*. at ¶ 23. Green further alleges that "Americollect negligently failed to review all relevant information available to it and provided by Equifax in conducting its reinvestigation as required by 15 U.S.C. § 1681s-2(b) and failed to direct Equifax to . . . remove the notation of 'account in dispute.'" *Id*. at ¶ 24. Green alleges that Americollect's failure to perform its duties under the FCRA caused her to suffer "damages, mental anguish, suffering, humiliation, and embarrassment." *Id*. at ¶ 26. In Count II, Green alleges that Americollect's purported violations of the FCRA were willful. *Id*. at ¶¶ 29-33. Lastly, in Count XV, Green alleges that Americollect violated 15 U.S.C § 1692(e) of the FDCPA by reporting information that it knew to be false. *Id*. at ¶¶ 110-116.

## IV. Discussion

### A. FCRA claims

The motion turns on the possibility of a furnisher having conflicting duties under the FCRA. On the one hand, if a consumer directly notifies the furnisher that the consumer disputes a debt, the furnisher must report to the credit reporting agencies notice of the dispute. 15 U.S.C. § 1681s–2(a)(3). On the other, if a credit reporting agency notifies the furnisher that a consumer disputes a debt, the furnisher must investigate; if the furnisher's investigation reveals either the legitimacy of the consumer's dispute or that the legitimacy of the dispute cannot be verified, the furnisher must modify, delete, or permanently block reporting of the disputed debt. *Id*. at §

---

[1] In her opposition, Green notes that her first-amended complaint "mistakenly lists April 28, 2020 as the date of the credit report instead of May 6, 2020." Doc. 70 at p. 3 n.1. The Court grants Green leave to amend.

1681s–2(b). In other words, if a consumer disputes a debt, the FCRA requires the furnisher to report it as disputed, but a furnisher's own investigation may trigger a duty to delete the reporting of the debt. The question therefore becomes which duty takes precedence.

While the resolution of these conflicting duties may ultimately decide the outcome of this case, the Court cannot reach that question at this stage because Green's allegations only triggered the duties imposed by section 1681s–2(b). Green never alleges that she directly disputed the accuracy of her Americollect tradeline with Americollect, and thus the duties imposed by section 1681s-2(a)(3) were not triggered by Green's complaint. Accordingly, with section 1681s-2(a)(3) not at issue at this stage of the case, the question simply becomes whether Green pleaded sufficient allegations to state a claim under section 1681s-2(b).

As stated above, the FCRA imposes duties on furnishers upon receiving notice of a dispute, *see* 15 U.S.C. § 1681s-2(b), and authorizes consumers to bring claims for willful or negligent failures to comply with the investigative requirements of section 1681s-2(b). *Id*. at §§ 1681n, 1681o; *McIvor*, 773 F.3d at 915; *see also Mendes v. JH Portfolio Debt Equities*, 2019 WL 4860660, at *4 (E.D. Mo. Oct. 2, 2019). Under section 1681s-2(b), after receiving notice "of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," furnishers must:

    **(A)** conduct an investigation with respect to the disputed information;

    **(B)** review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    **(C)** report the results of the investigation to the consumer reporting agency;

    **(D)** if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

> **(E)** if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
>> **(i)** modify that item of information;
>>
>> **(ii)** delete that item of information; or
>>
>> **(iii)** permanently block the reporting of that item of information.

*Id*. at § 1681s-2(b)(1). The furnisher's investigation generally must be completed no later than 30 days after the credit reporting agency received the consumer's dispute. *Id*. at § 1681s-2(b)(2); *see also* § 1681i(a)(1). The investigative duties of "a furnisher of credit information under 15 U.S.C. § 1681s-2(b) are triggered by notice that its information is being disputed from a CRA, not from the consumer." *Anderson v. EMC Mortg. Corp*., 631 F.3d 905, 907 (8th Cir. 2011) (citing 15 U.S.C. § 1681i(a)(2); *Gorman v. Wolpoff & Abramson, LLP,* 584 F.3d 1147, 1154 (9th Cir. 2009)).

Here, Green alleges that she sent a letter to Equifax requesting the "account in dispute" notation on her Americollect account be removed. Doc. 46 at ¶¶ 12, 13. Equifax sent this dispute to Americollect, *id*. at ¶ 14, thus triggering Americollect's investigative duties under section 1681s-2(b). *Anderson*, 631 F.3d at 907. Green further alleges that Americollect failed to conduct a proper investigation because it "negligently failed to review all relevant information available to it and provided by Equifax in conducting its reinvestigation as required by 15 U.S.C. § 1681s-2(b) and failed to direct Equifax to . . . remove the notation of 'account in dispute.'" *Id*. at ¶ 24. Lastly, Green alleges she suffered damages due to Americollect's violations. *Id*. at ¶ 26. Based on these allegations, the Court finds that Green sufficiently alleged a claim under section 1681s-2(b). *See Harris v. Equifax Info. Servs., LLC,* No. 20-cv-1770, 2020 WL 6545977 (M.D. Fla. Nov. 6, 2020).

Americollect argues that it cannot be liable under the FCRA based on Green's allegations because it had no new information to "reasonably investigate." Doc. 68 at p. 7. Americollect cites *Roth v. Equifax Info. Servs., LLC,* 2:16-cv-04325 JWS, 2017 WL 2181758 (D. Ariz. May 17, 2017) for support in its reply brief, Doc. 73 at p. 3, which found that the furnisher "had nothing to investigate upon receipt of the notice from Equifax" and that any investigation into the furnisher's files regarding the plaintiff's account would have simply revealed that the account remained in dispute. 2017 WL 2181758, at *3. *Roth*'s findings run counter to a furnisher's duties under the FCRA, which include "review[ing] all relevant information provided by the consumer reporting agency . . . ." § 1681s-2(b)(1)(B). Moreover, the determination of "[w]hether a defendant's investigation is reasonable [under section 1681s-2(b)] is a factual question normally reserved for trial[,]" *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005), and the reasonableness of an investigation will depend on the information the furnisher receives from the credit reporting agencies concerning the nature of the consumer's dispute. *Edeh v. Midland Credit Mgmt., Inc.*, 413 F. App'x 925, 926 (8th Cir. 2011) (citing *Westra*, 409 F.3d at 827; *Anderson*, 631 F.3d at 905; *Chiang v. Verizon New England, Inc.,* 595 F.3d 26, 38 (1st Cir. 2010)). Therefore, at this stage of the case, the Court cannot determine whether it would have been reasonable for Americollect to rely solely on its own files when performing its investigation after receiving Green's letter stating that she no longer disputed her tradeline. Accordingly, the Court denies Americollect's motion for judgment on the pleadings as to Green's FCRA claims.

Nevertheless, the entity that Green initially disputed the Americollect tradeline with will undoubtedly be revealed during discovery. In the event Green initially disputed the tradeline

directly with Americollect, the Court would then need to decide whether the statute creates conflicting duties and, if so, how they may be harmonized.

    B.    **FDCPA claim**

Green also alleges that Americollect violated section 1692e(8) of the FDCPA "by reporting credit information which is known to be false." Doc. 46 at ¶ 114; *see also* Doc. 70 at p. 14 (Green clarifying the specific subsection of the FDCPA Americollect allegedly violated). For the reasons explained below, the Court finds that Green fails to state a claim, but grants her leave to amend.

Under section 1692e(8), a debt collector cannot "communicat[e] . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). The Eighth Circuit has held that pursuant to section 1692e(8), if a debt collector knows or should know that a given debt is disputed, the debt collector must disclose the debt's disputed status to persons inquiring about a consumer's credit history. *See Wilhelm v. Credico, Inc.,* 519 F.3d 416, 418 (8th Cir. 2008) ("If a debt collector *elects* to communicate 'credit information' about a consumer, it must not omit a piece of information that is always material, namely, that the consumer has disputed a particular debt." (emphasis in original)).

Therefore, under the FDPCA, after Green's initial dispute of the accuracy of her Americollect tradeline, Americollect would be liable had it reported the debt to Equifax without indicating that the tradeline had been disputed. *See Wilhelm*, 519 F.3d at 418. But here, Green seeks to hold Americollect liable for reporting that the tradeline remained in dispute even after receiving notice from Equifax that Green no longer disputed the tradeline. Doc. 70 at pp. 14–15. Simply put, Green alleges that Americollect's failure to remove the "account in dispute" notation

after receiving notice that Green no longer disputed the tradeline violated the FDCPA because Americollect communicated information that it knew to be false. Americollect argues that Green fails to state a claim because section 1692e(8) did not require it to update the status of Green's Americollect account from disputed to undisputed. Doc. 68 at p. 10 (citing *Wilhelm*, 519 F.3d at 418; *Roth*, 2017 WL 2181758, at *2).

The Court finds that Americollect can be held liable for failing to change the account status from disputed to undisputed. With the Eighth Circuit having held that whether "the consumer has disputed a particular debt" is "always material" and thus a debt collector must disclose that an account is disputed when it "elects to communicate 'credit information[,]'" the fact that an account is no longer disputed would also be material. Other courts addressing *Wilhelm* have used broader language regarding the disputed status of a debt. For instance, in *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 349 (7th Cir. 2018), the Seventh Circuit stated "[w]hether *or not* a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt." (quoting *Gomez v. Portfolio Recovery Assocs., LLC*, No. 15 C 4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016), *aff'd sub nom. Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337 (7th Cir. 2018)). Additionally, while section 1692e(8) singles out "failure communicate that a disputed debt is disputed" as an example of an improper communication under the FDCPA, the use of the term "including" indicates that section 1692e(8) bars more than just communications that a debt is disputed.

Notwithstanding the Court's conclusions regarding the scope of section 1692e(8), the Court finds that Green fails to state a claim. As Green recognizes, she does not allege any facts demonstrating that Americollect continued to report false credit information after it received

10

notice from Equifax that she no longer disputed her Americollect tradeline. Doc. 70 at pp. 14-15. Cognizant of her omission, Green seeks leave to amend. *Id*. at p. 15.

Under Federal Rule of Civil Procedure 15(a)(2), the Court may "freely give leave when justice so requires[]" and a "denial of leave to amend . . . is appropriate only in those limited circumstances in which . . . futility of the amendment . . . can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citations omitted). To support that amendment would not be futile, Green attached her Equifax credit report to her opposition brief that illustrates that Americollect reported the tradeline as still in dispute on April 27, 2020—more than a month after the date of Green's letter to Equifax stating that she no longer disputes the tradeline. Doc. 70 at pp. 15, 42. The Court may properly consider the attached credit report when determining the motion because Green mentioned the May 6, 2020 credit report in her complaint, *see* doc. 46 at ¶ 15, meaning that the credit report constitutes a "document[] necessarily embraced by the pleadings." *See Porous*, 186 F.3d at 1079 (citations omitted); *see also Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) ("Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" (citations omitted)). Americollect did not respond to Green's arguments regarding the FDCPA claim in its reply, and thus does not oppose granting leave to amend or the authenticity of the Equifax credit report. Because the Court found above that Americollect can be held liable for failing to change the account status from disputed to undisputed, the Court concludes Green's contemplated amendment would adequately state a claim under section 1692e(8). Accordingly, the Court grants leave to amend pursuant to Fed. R. Civ. P 15(a)(2).

## V.     Conclusion

The Court grants, in part, and denies, in part, [67] Americollect's motion for judgment on the pleadings. The Court denies the motion as to Counts I and II, Green's FCRA claims against Americollect. The Court grants the motion as to Count XV, Green's FDCPA claim against Americollect, but the Court grants Green leave to amend the FDCPA claim. Green must file her amended complaint and include, as an exhibit, the amended complaint with all changes tracked for comparison with the original pleading.

A Rule 16 conference will be set by separate order of the Court. The Court further notes that Defendant Caine & Weiner Company, Inc. failed to timely file an answer. The parties must be prepared to discuss the status of Caine at the Rule 16 conference.

So Ordered this 29th day of June 2021.

*SL R. CR*

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**